Roger Lee JOHNSON, Appellant,

v.

Diann E. JOHNSON, Respondent.

No. WD 45521.

Missouri Court of Appeals,
Western District.

Oct. 6, 1992.

Gary Vance Cover, Clinton, for appellant.

George R. Lilleston, Clinton, for respondent.

Before ULRICH, P.J., and SHANGLER and FENNER, JJ.

FENNER, Judge.

Roger Lee Johnson appeals a decree of dissolution which dissolved his marriage to Diann E. Johnson, challenging portions of the decree relating to child custody, child support and the division of marital property.

The parties were married on June 26, 1976, in Garnett, Kansas. Two children were born to the marriage; Alexandra, born September 21, 1984, and Reid, born March 27, 1986.

At the time of trial, Roger was employed in Clinton, Missouri, at Rival Manufacturing as a Corporate Scheduler where he had been employed during most of the marriage.

Diann was living in Garnett, Kansas, at the time of trial which was her home town and where she was employed by Wal–Mart. During the marriage she had been employed in retail sales positions and as a dental assistant. After Alexandra was born the parties decided it was best that she stay home to raise the child.

The record reflects that after the birth of the children the marriage became quite turbulent. It is unnecessary to go into great depth regarding the sordid details of the marital discord. Suffice it to say that the parties began engaging in a variety of indecorous conduct. The record reflects allegations that Roger began to physically and mentally abuse Diann. Also, the parties began to utilize pornographic materials and with Roger's approval, Diann became involved in amateur strip tease contests and engaged in extramarital sexual affairs. As a result of Roger's abusive behavior, Diann eventually left the marital home and stayed

for two weeks at an abuse shelter in Warrensburg, Missouri.

The parties attempted reconciliation and sought counseling without success. In the fall of 1990, Diann and the children moved to St. Louis, Missouri. At Roger's request, Diann returned to Clinton over the Thanksgiving holiday so that Roger could visit the children. Roger refused to return the children to Diann following the visitation, filed for legal separation and obtained a temporary order giving him custody of the children. Diann then moved back to Clinton to be close to the children and filed a cross-petition for dissolution. Upon motion, Diann was awarded temporary custody of the children after which she moved to Garnett, Kansas, where she resided at the time of trial.

Following a three day trial the trial court ordered the marriage dissolved. Diann was awarded custody of the two minor children.

Roger now appeals raising six points of error. In his first point, Roger argues that the trial court erred by awarding custody of the children to Diann. He sets forth three bases upon which he relies for support. Roger first maintains that the trial court exhibited bias against him and in favor of Diann by making comments, noises and gestures during the trial.

█ The comments Roger refers to were made at a point in the trial when Roger's counsel was attempting to show that Diann's sexual misconduct was extensive and of her own accord. Counsel was attempting to introduce evidence regarding the volume of lingerie purchased by Diann apparently for use in her stripping activities. Counsel for Diann objected on the grounds of relevancy after which the court questioned the relevancy of naming the manufacturer of the clothing and stated:

THE COURT: What does—What does the source of her clothing tend to prove in this case? Now, before you were talking about her morality or lack of it, you're trying to prove that. That's— That's an issue. But where she gets the clothing she wears, I don't understand how that bears on any issue that pends

in this case. I really don't. You've already got photographs of the types— You know, everybody knows what Frederick's of Hollywood sells, okay? I suppose.

THE COURT: No. I order things from them all the time. I like to wear them myself, you know.

Roger fails to set forth the remainder of the court's comments in this regard. The trial court continued:

THE COURT: That's untrue. Maybe we need a stretch. I don't know. I'm losing my patience, but maybe I am—Okay. What I'm trying to tell you is we're grinding exceedingly fine here. I think fine beyond what you need to.

The question posed by Roger's counsel concerning the manufacturer of the clothing was withdrawn. The trial court further stated:

THE COURT: Let me back up on something I said. I don't want to deprive a guy of the opportunity to prove his case, either side ...

The court's comments would have clearly been best left unsaid, however, any indication of bias exhibited by the court was clarified and rectified by the subsequent explanation given. The record does not show that the court exhibited prejudice toward Roger.

█ Roger also complains of an occasion wherein he claims the trial court made what is referred to as "raspberry sounds" to apparently show its opinion of the events and the witness' testimony and to indicate bias against him.

The context in which the complained of sounds were made occurred at the end of the day on the first day of trial. The trial court made a "raspberry sound" then proceeded to explain:

THE COURT: You see, we stay in here all day and it is kind of intense, and by about 5:30 people sum things up by saying (Raspberry sound).

It is clear from the transcript of the proceeding that the trial court was not indicating bias against Roger. Although

the expression was inappropriate and invites challenge, the record reveals that the trial court was expressing a sense of tiredness at the end of a the day, not prejudice.

■ Roger next complains that the trial court exhibited bias against him by failing to admonish counsel for Diann when counsel cursed during the proceeding. While we do not condone such behavior by counsel, Roger fails to show how this activity could have prejudiced him and this court is not given to speculation in order to invent prejudice where none is shown.

The second basis which Roger relies on to support his argument that the trial court erred by awarding custody to Diann is that the court in its Findings of Fact adopted Diann's version of the facts as being "uncontroverted" despite a wealth of evidence which directly contradicted those facts.

■ Roger recognizes the standard by which this court is required to abide in this type case. That is in court tried marriage dissolution cases, the decree of the trial court will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Mehra v. Mehra*, 819 S.W.2d 351, 353 (Mo. banc 1991) (citation omitted). However, it is apparent from the lengthy recitation of the facts to support his position that Roger has lost sight of the principle that due regard is given to the trial court's determination of credibility, viewing the evidence and permissible inferences therefrom in the light most favorable to the decree, disregarding all contrary evidence and inferences. *Id.* The decision of the trial court will be given deference even if the evidence could support a different conclusion. *Bixler v. Bixler*, 810 S.W.2d 95, 99 (Mo.App. 1991).

■ Moreover, the determination of the trial court in regard to child custody cases is granted greater deference than in other types of cases. *In re Marriage of Zavadil*, 806 S.W.2d 506, 509 (Mo.App.1991) (citation omitted). There is no precise formula used to determine the outcome of a custody case and each case must be examined on its own peculiar facts and circumstances. *Id.* While this court does have authority to reverse a custody award if it is not in the child's best interests, that authority will be exercised with caution and with a firm belief that the decree is wrong. *Id.*

■ There is little doubt after reviewing the record that neither parent exemplifies what may be described as model parent characteristics. Furthermore, the characterization of Diann's version as being uncontroverted is incorrect. As is common in many divorce cases, Diann's behavior was contested and the trial court was left in the difficult position of determining what would serve the best interests of the children. Because the trial court was in the best position to determine and resolve the factual disputes, and the record reveals nothing which indicates it reached an incorrect result, the determination to place custody of the children with Diann is affirmed.

Roger's third subsection to point one basically reiterates and lists additional testimony from various witnesses which in summary relates to Diann's immoral activities and her abrupt change in behavior, which Roger claims supports his position. In light of the previous discussion in regard to Roger's first point, it is unnecessary to restate the standards for review. Furthermore, a lengthy discussion regarding the substance of that testimony would be of no value to the parties or serve any precedential purpose of law. The record has been carefully reviewed. Both parties acted inappropriately during the course of the marriage. However, the decision of the trial court regarding custody is supported by the evidence. Point one is denied.

In his second point, Roger argues that the trial court failed to properly follow the factors for determining child custody, set forth in § 452.375, RSMo 1986, because the evidence established that five of the eight factors supported an award of child custody to him and only three favored an award to Diann.

Roger's point two is basically a reiteration of his argument set forth in point one. Once again he sets forth the evidence favorable to his position and ignores the

standard of review. The reader is referred back to point one and for the reasons set forth therein point two is likewise denied.

In his third point, Roger alleges that the trial court erred in failing to appoint a guardian ad litem pursuant to § 452.423, RSMo 1986, because said appointment is required in child custody cases where, as here, Roger argues, abuse is in issue.

Section 452.423 mandates appointment of a guardian ad litem in any case where child abuse or neglect is alleged. This is so even if the parties do not request such appointment. However, the provision is not applicable in the present case first, because child abuse or neglect, was not alleged in the petition for dissolution. Second, although there was evidence to support a finding that Roger abused Diann mentally and physically on occasions during the marriage, Roger cites nothing in the record to show it was apparent that the children were abused by either party. The provisions of § 452.423 were inapplicable. Point three is denied.

In point four, Roger complains that the trial court erred in admitting confidential documentary evidence at trial. This allegation of error centers around information given by Roger on an intake form completed in the course of obtaining counseling from a community mental health center. In response to an inquiry on the form regarding the reason that he came to the counseling center, Roger responded, in his own handwriting that "I have physically, emotionally and psychologically abused my wife Diann."

At trial, Sally Strech, a licensed professional counselor testified on behalf of Diann. An attempt was made by Diann's counsel to elicit a portion of the contents of the intake form completed by Roger. The court sustained an objection to the testimony and to the admission of the document on the basis that the communication contained therein was privileged.

Following the trial court's refusal to admit the document, Roger was recalled to the stand by counsel for Diann. Over objection, counsel for Diann was allowed to question Roger with regard to whether he had made the statements contained on the intake form. On cross-examination, Roger was questioned with respect to his reasoning for making the statements in an apparent attempt to rehabilitate his testimony on direct-examination.

Later in the trial, the clinical director for the counseling center was called to testify and identified certain records pertaining to the Johnson family, including the intake form, as being kept in the usual and ordinary course of the business of the counseling center. The trial court then allowed the intake document to be admitted as a business record under the Missouri Business Records Act.

This court agrees that the document was improperly admitted, but disagrees that its admittance constituted reversible error. The relevant statutory provision which governs the present circumstance is § 337.540, RSMo 1986, which provides as follows:

Any communication made by any person to a licensed professional counselor in the course of professional services rendered by the licensed professional counsel shall be deemed a privileged communication and the licensed professional counselor shall not be examined or be made to testify to any privileged communication without the prior consent of the person who received his professional services, except in violation of the criminal law.

The intake form, according to Sally Strech is a form which must be completed by a person seeking treatment at the counseling center prior to consulting with a counselor. At the top of the form there is a statement that "This form is to be completed by you. This information will be used by the therapist to help in your counseling and will be kept strictly confidential." Pursuant to § 337.540, the form constitutes a "communication made by a person to a licensed counselor in the course of professional services rendered by the licensed professional counselor ..." and is privileged. The document was improperly admitted as a business record. Further-

more, the procedure to use when a question is raised as to the mental condition of a parent seeking custody is set forth in Rule 60.01 which gives the court authority to order a mental examination of a party. See also, *Griggs v. Griggs*, 707 S.W.2d 488, 491 (Mo.App.1986). No such examination was requested here.

The introduction of the document and testimony relating to the statements made by Roger therein were aggressively objected to at trial. However, on cross-examination, Roger's counsel did question Roger as to whether he had ever physically, emotionally, or psychologically abused his wife to which he responded in the negative. Moreover, the obvious attempt by counsel for Diann was to bring forth evidence into the proceeding that Roger himself had admitted to abusing his wife. A review of the record indicates that this was not necessary due to other evidence before the court in the form of testimony of other witnesses to the effect that Roger had on prior occasions abused Diann. This evidence having already been before the court, the error in the present case was not reversible. Because no reversible error is found, point four is denied.

In point five, Roger argues that the trial court erred by admitting the testimony of persons whose names had not been disclosed in discovery in violation of Rule 56.-01. During discovery, Roger propounded to Diann a series of interrogatories. The one pertinent to this appeal is Number 33 which requested the following:

33. Please state the name and address of each and every person who has information or evidence to substantiate your claim that it is now in the best interest of the said minor children that custody be placed with you.

The complained of witnesses were Pam Little and Naomi Sapp. Both were called on behalf of Diann to testify regarding the relationship between Diann and the children. An objection was raised during the testimony of Little and renewed during the testimony of Sapp. In response to the objection to Little's testimony, the trial court expressed reservation, but allowed counsel for Diann to question the witness only as to the relationship between Diann and the children. When Sapp was called to testify, the trial court sustained an objection to her testimony. Therefore, the point on appeal as it relates to the testimony of Naomi Sapp need not be addressed since her testimony was disallowed.

██ With respect to the testimony of Pam Little, Roger recognizes that it is a decision left within the sound discretion of the trial court to admit or reject testimony of witnesses whose identity and location, though known to a party tendering the witness was not revealed in the answers to questions propounded in interrogatories. *Keyte v. Parrish*, 399 S.W.2d 601, 606 (Mo. App.1966).

██ There was no prejudicial error in the admission of the testimony of Pam Little. A review of her testimony reveals that the trial court did not abuse its discretion by limiting, but allowing her testimony. Point five is denied.

In his sixth and final point, Roger argues that the trial court erred in its division of marital property by contributing a dollar value to the parties' shares of stock in Rival Manufacturing Company because there was no evidence of such value.

██ The trial court determined that the parties were possessed three hundred shares of stock with a value of $15,000 and Roger was awarded all shares in the property division. Roger claimed he owned only options to purchase shares of stock which had no value. However, Sheila Butler, Personnel Manager for Rival testified that Roger actually owned 300 shares of stock.

Roger is correct in his assertion that there was no evidence presented as to the value of the stock. In fact, the only evidence from which the trial court could have arrived at the $15,000 figure for the value of the stock came in during cross-examination of Roger by Diann's counsel. Counsel was trying to establish a dollar figure for the stock and asked several times whether Roger knew the value of the stock with Roger continually replying that he did not.

At one point the following colloquy occurred:

Q. Let's see if I understand this, sir. You're going to tell [the Judge] that you have absolutely no idea of what the current value of Rival Manufacturing stock is?

A. Correct.

\* \* \* \* \* \*

Q. Would it surprise you to know that the last trades of the Rival Manufacturing stock within the closely-held shareholders was at $50 a share?

A. Preferred or common?

Q. Common.

A. I don't know if I'd be surprised or not, but I—I honestly don't—

Q. Are you aware—Are you aware of trades at that dollar figure, sir?

A. No.

Q. You're not? All right. Good enough. . . .

Section 452.330, RSMo 1986, requires the trial court to make a just division of marital property. There is no evidence in the record of the value of the stock. The question posed by counsel for Diann as set forth above does not constitute competent evidence from which the trial court could have reached the $15,000 value.

Where the record reveals no evidence of the value of an asset, especially where the asset is found to have significant value, this court cannot determine if the division of marital property was just. *Green v. Green*, 623 S.W.2d 265, 267 (Mo.App.1981) (citations omitted).

Based on the foregoing, the judgment ordering distribution of marital property is reversed and the case is remanded to the trial court for division of the marital property after a determination of the value of the stock held by Roger in Rival Manufacturing. The judgment in all other respects is affirmed.

All concur.