Mark Edwin RINEHART,
Plaintiff–Respondent

v.

Judy Dawn RINEHART, Defendant–
Appellant.

No. 18853.

Missouri Court of Appeals,
Southern District,
Division One.

May 31, 1994.

John Wm. Ringer, Powell, Ringer & Bischof, Dexter, for appellant.

G.H. Terando, Wilhoit, Edmundson, Terando & Hopkins, Poplar Bluff, for respondent.

PARRISH, Chief Judge.

Judy Dawn Rinehart appeals the custody award in a dissolution of marriage case. The trial court entered a decree of dissolution in which it awarded custody of the two minor children of the parties to Mark Edwin Rinehart. This court affirms in part, reverses in part and remands with directions.

The parties were married January 23, 1986. They have two children, Mark Eric Rinehart (who is known by his middle name, Eric) born November 3, 1987, and Sarah Dawn Rinehart born May 13, 1990. The parties separated February 20, 1992. Judy

and Mark had discussed problems with their marriage prior to the February 20 separation. On two or three prior occasions, Mark left Judy but later returned.

Mark is a farmer. He farms with his father. Judy is a teacher. She taught for several years at a school district near Essex, Missouri. She first taught there in 1987. At the time of trial, Judy was teaching at New Madrid County Schools. From May 1991 until September 1991, Judy had an affair with a student, Ronnie Patterson, who attended the school where she taught. The student was 17 years old when the relationship began. The relationship resumed in November 1991.

The trial court's written findings included:

1. The Court does not find that [Judy] conducted a sexual relationship with Ronnie Patterson directly in the presence of the children;

2. The Court finds that [Judy] is a fit parent as stated above; [1]

3. The Court finds no specific adverse effects to the children caused solely and directly by the extramarital affair exclusive of all other causes arising from the break up [sic] of the marriage;

.  .  .  .  .

Other facts relative to the determinative point on appeal will be included in the discussion of the issue presented.

This court must first determine two pending motions. The attorney for Mark filed "Respondent's Motion to Dismiss Appellant's Brief for Failure to Comply with Rule 84.-04(d)" and a "Motion to Strike."

Judy's appellant's brief attempts to state three "Points Relied On." Mark's motion asserts that the first point does not comply with the requirement of Rule 84.04(d) that points on appeal state the actions or rulings complained about. Rule 84.04(d) requires an appellant to "give the appellate court a short, concise summary of what the appellant claims the trial court did wrong and wherein and why the appellant claims it was wrong."

*Parker v. Wallace,* 473 S.W.2d 767, 772 (Mo. App.1971).

■ Point I states, "The trial court correctly did not allow the separation agreement provisions relating to child custody to control the issue of the best interests of the child." It does not state any action or ruling of the trial court that is contended to be erroneous. It presents nothing for review.

Likewise, Point III fails to allege any action or ruling of the trial court that is claimed to be erroneous. It states:

Upon granting primary custody to the mother, this court should enter an order of child support payable by the father to the mother based upon Form 14, using the mother's gross income from her teacher's salary, and the fathers [sic] effective gross income from his farming operation, taking into account his depreciation, and further ordering the father to maintain health insurance covering the two children as dependents.

It presents nothing for review.

■ Point II includes a rambling narrative that covers over three and one-half pages. It does not comply with the admonition of Rule 84.04(d) that points on appeal are to be stated "briefly and concisely." It does, however, based on the factual allegations stated in its narrative, assert that the trial court erred because the granting of custody of the children to Mark "is against the weight of the evidence, is not supported by substantial evidence, is based on an erroneous declaration and application of law, and manifests an abuse of discretion on the part of the trial court."

■ Where child custody is in dispute, questionable points on appeal will not be stricken even though the *manner* of stating the claimed deficiencies may hinder their review. *See Rodenberg v. Rodenberg,* 767 S.W.2d 594, 595 (Mo.App.1989). Appellate courts are more tolerant regarding technical requirements when the questions presented relate to the welfare of children. *Stamme v. Stamme,* 589 S.W.2d 50, 54 (Mo.App.1979).

---

1. The trial court included its decision as to child custody in the document in which it made written findings. Prior to the findings quoted above,

the document states, "The Court finds both [Mark] and [Judy] to be fit as parents and custodians of [their] children."

This court can glean the complaints Judy's brief raises in Point II sufficiently to permit appellate review of the issue presented on its merits.

Respondent's Motion to Dismiss Appellant's Brief for Failure to Comply with Rule 84.04(d) is granted as to Points I and III and denied as to Point II.

Mark's Motion to Strike is directed to the inclusion of an appendix to Judy's appellant's brief. The appendix contains copies of correspondence and a Form 14. The motion aptly suggests that such items, if appropriate for consideration, should be included in the legal file component of the record on appeal. The issue, however, is moot. The items included in the appendix relate to the request contained in Point III of that brief. Point III has been stricken.

The trial court's decree awarded joint legal custody of the children to Mark and Judy. It stated that it awarded physical custody to Mark and temporary custody and visitation privileges to Judy. In *In re Marriage of Johnson,* 865 S.W.2d 412, 415 (Mo. App.1993), this court identified similar arrangements as being an award of joint physical custody. Such arrangements satisfy the definition of "joint physical custody" that appears in § 452.375.1(2).[2] Judy's Point II will, therefore, be considered as a contention that the time the children would spend with each parent by the terms of the award of joint physical custody is against the weight of the evidence, is not supported by substantial evidence, is based on a misapplication or misstatement of law.

Section 452.375.2 specifies factors to be considered in awarding custody of children. It states:

The court shall determine custody in accordance with the best interests of the child. The court shall consider all relevant factors including:

(1) The wishes of the child's parents as to his custody;

(2) The wishes of a child as to his custodian;

(3) The interaction and interrelationship of the child with his parents, his siblings, and any other person who may significantly affect the child's best interests;

(4) The child's adjustment to his home, school, and community;

(5) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved;

(6) The needs of the child for a continuing relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(7) The intention of either parent to relocate his residence outside the state; and

(8) Which parent is more likely to allow the child frequent and meaningful contact with the other parent.[3]

Both parents sought custody of the children. The trial court heard evidence with respect to factors (1) and (3). Appropriately, considering that the children were ages 4 and 2 at the time of the trial, there was no evidence regarding factor (2), the wishes of the children as to their custodian.

Other than evidence that Mark discontinued Eric's attendance at the preschool he attended prior to the parents' separation, there was no evidence with respect to factor (4).

As to factor (5), there was no evidence that either parent suffered from ill health, physically or mentally. There was evidence, however, of altercations between Mark and Judy that involved physical violence, including temper tantrums of Mark that resulted in his throwing a vacuum sweeper down a stairway and, when Judy failed to roll up and store a

---

2. References to statutes are to RSMo Supp.1992. § 452.375.1(2) states:

"**Joint physical custody**" means an order awarding each of the parents significant periods of time during which a child resides with or is under the care and supervision of each of the parents. Joint physical custody shall be shared by the parents in such a way as to assure the child of frequent and continuing contact with both parents.

3. The public policy of this state requires its courts "to assure children frequent and meaningful contact with both parents after the parents have separated or dissolved their marriage." § 452.375.3.

water hose in the manner he deemed appropriate, in his cutting the hose into pieces.

Judy testified that there were occasions when Mark was abusive in attempts to force her to have sexual relations at an inappropriate time or against her will. She testified that on one occasion he entered the bathroom when she was in the shower, locked the door and tried to force her to have sexual relations with him. She was asked, "Where were the children?" She answered, "Standing outside the door crying."

Judy testified about another occasion when the children were not at home and Mark had been drinking; that he threw her to the floor and pulled her shirt over her head; that he bound her arms by placing her shirt under the leg of a chair. According to Judy, these events occurred two to three months prior to the separation.

There was evidence relative to factors (6) and (8). Mark demonstrated an unwillingness to permit frequent and meaningful contact between Judy and the children so that the needs of the children to maintain a continuing relationship with both parents could be met. After the separation, Mark took the children without Judy's consent. Eric was with Mark's father. Mark came to the residence, told Judy, "[W]e're getting a divorce," and took Sarah. When he did not return Eric to the preschool Eric had been attending, Judy asked Mark why Eric had been removed from the school. Mark told her it was not her concern.

After Mark took the children from Judy and after the separation, he did not keep her advised about where the children were. Judy testified:

Q. [By her attorney] Since February have you been concerned about where the children would be when Mark had them?

A. I never knew where they were because they were bounced around so much. I made constant phone calls and never could reach them.

Q. Who would you call?

A. Mark's house. In the beginning, I called his mother. And until it got—Until she started harassing me or bothering me, and I stopped calling, because I didn't want her to say I'd harassed her.

Q. Are there occasions that you know of when the children, while Mark had them, would be staying around at various places like with his sister one day, with his mother the next?

A. Yes.

Q. How do you know those—those to be the facts, Judy?

A. Because I'd call looking for them and I couldn't find them. If I called mom, she said, they're at Michelle's or they're there or they're here. They weren't in a certain spot every time.

A few days after Mark took the children, he arranged to meet Judy at a McDonald's parking lot. He told her he had papers for her to sign. Judy signed the papers. She was asked, "After you signed the agreement was there any change in Mark's attitude towards you and how he treated you?" She answered, "Before I signed it, he kept the kids away from me." She was asked what happened after she signed the papers. She answered, "Well, I could see them."

There was no evidence that factor (7) is applicable; that either party plans to relocate outside Missouri.

A trial court's findings as to custody are not to be disturbed on appeal unless the reviewing court is convinced that the welfare of the children requires some other disposition. *Fastnacht v. Fastnacht*, 616 S.W.2d 98, 100 (Mo.App.1981). A custody award should be revised only if this court is convinced that the children's welfare requires some other disposition. *Id.*

Here, as in *Handshear v. Handshear*, 775 S.W.2d 544, 545 (Mo.App.1989), shortly before filing the dissolution action, the father took the children from the family home to live with him without prior discussion or agreement. He limited Judy's contact with the children even to the point that he did not share information as to who was caring for them day-to-day and why Eric was removed from the preschool he previously attended, telling her it was none of her concern. A parent's history of denying the other parent meaningful contact with a child may be con-

sidered in determining the child's physical placement. *Harris by Harris v. Harris*, 803 S.W.2d 167, 169 (Mo.App.1991).

During the course of the marriage, Judy was the primary attendant for the children. There is little evidence of Mark's involvement with the children until shortly before he brought this dissolution of marriage action. This court concludes that the trial court's award of "primary physical custody" of the children to Mark was an abuse of discretion. The allocation of time the children were placed with each parent was not in the best interests of the children; it was against the weight of the evidence and was based on an erroneous application of law in that it amounts to misapplication of the factors specified in §§ 452.375.2(6) and (8), the needs of the children for continuing relationships with both parents and which parent was more likely to permit frequent and meaningful contact with the other parent.

This court is possessed of the firm conviction that the child custody portion of the trial court's judgment was wrong. Point II is granted.

That part of the judgment purporting to award physical custody to Mark and temporary physical custody and visitation rights to Judy is reversed and the case is remanded with directions that the trial court enter judgment awarding joint physical custody to the parties with specified times allocated between the parents as follows.

The children shall be in Mark's custody and control: (a) on the first and third weekends of each month from 6:00 p.m. on Friday until 6:00 p.m. on Sunday, other than on Mother's Day should that holiday occur on the first or third weekend of a month; (b) on every Father's Day from 6:00 p.m. on the preceding day until 6:00 p.m. on Father's Day; (c) in even-numbered years on both children's birthdays from 10:00 a.m. until 6:00 p.m.; (d) during Christmas holidays in even-numbered years from 10:00 a.m. on December 24 until 6:00 p.m. on December 30; (e) in even-numbered years from 6:00 p.m. on the day preceding the following holidays until 6:00 p.m. on the holiday—Easter, Independence Day, and Labor Day; (f) in odd-numbered years from 6:00 p.m. on the day preceding the following holidays until 6:00 p.m. on the holiday—Memorial Day and Thanksgiving; (g) for two successive weeks in the summer on dates to be agreed upon by the parties, provided, in the event they do not agree on or before June 30 of any year, the dates for that year shall be from 6:00 p.m. on July 15 until 6:00 p.m. on July 29; and on other reasonable occasions to be agreed upon by the parties.

The children shall be in Judy's custody and control: (a) in odd-numbered years on both children's birthdays from 10:00 a.m. until 6:00 p.m.; (b) in odd-numbered years from 6:00 p.m. on the day preceding the following holidays until 6:00 p.m. on the holiday—Easter and Independence Day; and at all times other than when the children shall be in Mark's custody and control as heretofore stated. The right of either party to have custody and control of the children on specifically designated holidays shall take precedence over rights of custody and control otherwise awarded the other party.

The trial court is further directed to award child support in such amount as it determines reasonable in accordance with § 452.-340 and Rule 88.01. Whether it is necessary to have further evidentiary hearings to determine the amount of child support to be awarded is left to the sound discretion of the trial court. The custody award is reversed and remanded as aforesaid. In all other respects the judgment is affirmed.

SHRUM and MONTGOMERY, JJ., concur.