**Sherry Ann ALT, Respondent,**

v.

**Edward M. ALT, Appellant.**

**No. WD 49423.**

Missouri Court of Appeals,
Western District.

April 18, 1995.

Glen A. Dietrich, Maryville, for appellant.

Roger M. Prokes, Maryville, for respondent.

Before HANNA, P.J., and BRECKENRIDGE and SMART, JJ.

PER CURIAM:

This case involves the modification of an award for custody of a minor child and a child support obligation. Edward Alt appeals from the trial court's order of modification.

Judgment is reversed and the case is remanded.

Sherry Alt ("Mother") and Edward Alt ("Father") were divorced on January 25, 1993. The parties were awarded joint legal and physical custody of the only child born of the marriage, Mikaela Leah Alt, who was born on May 24, 1987. Each parent had actual physical custody of the child approximately one-half of the time. On November 9, 1993, Mother filed a motion to modify the custody and support obligation award, which was heard on February 17, 1994.

In the motion to modify, Mother alleged the custody arrangement needed to be changed because Father had failed to provide responsible care for Mikaela. In support of her contention, she alleged that Father: 1) neglected to see that the child had proper rest; 2) failed to see that the child was properly clothed in light of weather conditions and activities in which she would be involved; 3) failed to communicate to Mother homework and class assignments; and 4) failed to supervise the child so that she fulfilled her academic responsibilities. The trial court, after hearing evidence, modified the original award eliminating joint physical custody and awarding physical custody of Mikaela to Mother, with reasonable visitation rights to Father. The trial court also increased the child support obligation from $200 per month to $340 per month. Father appeals.

■ First, Father contends that the trial court erred in sustaining Mother's motion to modify because Mother did not show a change had occurred in the circumstances of the child. Thus, Father argues that the modification award was not supported by substantial evidence. This court must affirm the trial court's judgment unless the judg-ment is clearly against the weight of the evidence or the judgment erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

■ Section 452.410.1, RSMo 1994 allows the trial court to modify a custody decree if evidence is presented which shows: (1) that a change has occurred in the circumstances of the child or the child's custodian; and (2) that modification is necessary to serve the best interests of the child. After child custody has been adjudicated in a dissolution proceeding, the custody award is presumed suitable and the party seeking modification of the award bears the burden of showing a substantial change of conditions mandating the requested change to further the best interests of the child. *Hoefer v. Hoefer,* 860 S.W.2d 376, 378 (Mo.App.1993).

Prior to the modification hearing, the parties shared the joint legal and physical custody of the child for approximately one and a half years. Each party was with the child about one-half of the time. Mother would have the child four days one week, while Father would have the child three days that week. The next week the parties would switch and Father would have the child four days and Mother would have her three days. The parties would exchange custody of Mikaela on each Wednesday.

■ On appeal of the custody order, we view the evidence in the light most favorable to the decision of the trial court. Mother's testimony at the hearing included her opinion that the child does not get the amount of rest that she needs when in Father's care. When the child is in her mother's care, the child has a 9:00 p.m. bedtime. Mother testified, however, that the child was up late when the child stayed with Father. She testified as to several specific occasions when the child was up past 11:00 p.m. because Father took Mikaela with him when Father had to work late. Mother also asserted that Father on several occasions failed to properly clothe the child for the weather conditions. Mother testified that she knew of times when Father would allow the child to go out on cold days without gloves or with bare legs. On at least one occasion, she said, Father sent Mikaela

to school with holes in her shoes. Mother also recounted one incident where the child had a blister on her foot from roller-skating while in Father's care, which she understood was due to the fact that the child had not worn socks while skating.

Mother complained that sometimes Father failed to communicate homework and class assignments to her. There was some confusion between the parties regarding a group of assignments sent home every week known as the "Wednesday bag." The assignments were sent home on Wednesday and were to be completed by the combined effort of student and parent, and returned on either Friday or Monday. Sometimes the parties failed to communicate as to whether the assignments had been completed or whether they had been returned to school. Also, the "Wednesday bag" would sometimes inadvertently be left at the wrong house. Mother further testified that the child was no longer allowed to check out books from the school library because twice the child was unable to return the books on time due to communication problems with Father.

April Lawyer, the child's first grade teacher, testified that Mikaela was an average first grade girl. She described the child's ability as average and above. She stated that Mikaela sometimes appeared tired, which she did not regard as unusual for first grade students. Also, she noted that this condition appeared to have improved. The teacher testified that Mikaela had all satisfactory and outstanding marks on her report card, and that the only area in which she was given a grade of "needs improvement" was her handwriting. In response to the question as to whether Mikaela appeared to be a normally adjusted child, she stated:

> I believe she's as adjusted as she can be considering some of the circumstances.... It is my opinion, no research or facts to document, that a child six and seven years old should have a consistent weekly place that they go. I believe their set up, as much as I could understand, is a three day, four day and then it switched the next week, four day, three day. And because our school is set up on a five day, we send home notes on Monday and on Friday we

have something going on. Well, she's switched in the middle of the week. I believe Sherry and Ed have done a good job communicating. Both have been to all the conferences and her music program. They've communicated as well as you possibly can for the set-up, in my opinion.

After hearing the evidence, the court commended both parents for doing a good job with the child. The court stated that the individual acts asserted against the father seemed not to be substantial but rather were somewhat "nitpicky." The court, nevertheless, adverting to the testimony of the teacher, stated that it seemed clear to him that the child "needs to be in one place during the school year." Counsel for the father suggested that the teacher had said only that in her opinion the child should not be transferred between parents in mid-week; the teacher had not suggested the child needed to be in one home throughout the school year. The court stated that, nevertheless, in its opinion the joint physical custody would not work in the long run because there was a tendency for things to "get lost in the shuffle." The trial judge stated that the court could change the plan of joint physical custody so that the transfer of custody did not take place in the middle of the school week, but the court believed that it would not solve the problem for the long haul and that it would just be a matter of time before the parties would be back again on a motion to change custody. The trial court went on to find that the parties' inability to communicate constituted a change of circumstances, and awarded physical custody to Mother.

This court, in reviewing the trial court, will defer to the decision of the trial court where there is a basis in the evidence to justify the trial court's decision. *Johnson,* 839 S.W.2d 714, 717 (Mo.App.1982). The trial court is granted greater deference in custody cases than in other cases. *Id.* Nevertheless, there must be an evidentiary basis to support a finding of a "change in circumstances," which gives the trial court jurisdiction to consider making a change from joint physical custody to an award of custody to just one parent. *Moore v. Moore,* 849 S.W.2d 652, 656 (Mo. App.1993).

■ Here, in our view, there is evidence of some communication difficulties and evidence that some things were "getting lost in the shuffle." The evidence does not show that the parties had major difficulties communicating with one another. The evidence showed that when Mother voiced a concern to Father about his care of Mikaela, Father stated that he would try harder to cooperate with Mother's suggestions. Mother claimed skepticism about Father's willingness to cooperate in the long run, but the trial court's comments reveal that the trial court did not believe that Father had been recalcitrant. There was evidence that the mid-week transfer of physical custody was creating confusion for both parents and Mikaela, and that Father, in particular, had not stayed on top of communication matters, such as making copies of school correspondence for Mother.

There is a clear reluctance on the part of Missouri courts to change single custody from one parent to the other without a change of circumstances related to the child or the custodian. *Clouse v. Clouse*, 545 S.W.2d 402, 407–08 (Mo.App.1976); *Friend v. Jackson*, 714 S.W.2d 953 (Mo.App.1986). We have recognized in single-custody situations, the value in "allowing children to remain with the parent who has had custody over a long period of time as against uprooting them to settle elsewhere." *Moore v. Moore*, 849 S.W.2d 652, 655 (Mo.App.1993). Perhaps a change from joint physical custody to single custody would also involve some "uprooting effect" to the child, although to a milder degree. The circumstance that the trial court faced was, from all of the evidence, that the arrangement was an appropriate joint physical custody arrangement, but one that was flawed in one respect. The teacher correctly identified the problem and the judge agreed. A sledge-hammer was not necessary to correct the defect; the evidence does not support that result.

The trial court, believing that the current circumstances were not optimal due to the tendency for things to "get lost in the shuffle," had occasion to consider changing from joint physical to single physical. But the court also had occasion to consider whether a far less drastic adjustment, such as more "fine-tuning" in the plan of joint physical custody, would cure the deficiencies in the present arrangement. As things existed at the time of trial, the child was changing hands twice a week, one time in the middle of the school week. One week she was with Father three days, and Mother four. The next week, the respective portions were reversed. Transfer was consistently on Wednesday night, and the weekend transfer times varied. Her teacher testified that this arrangement created problems at school and with her school work. It is reasonable to conclude that if the child is transferred less frequently, and at a time that would involve less confusion as to school matters, the opportunities for confusion would be substantially reduced.

The trial court did not believe that merely fine-tuning the arrangement would work for the long run. Rather, it believed that a change from joint physical custody to single physical custody was necessary in the interest of the child. Perhaps time will reveal that the trial court was correct in predicting that anything short of revoking joint physical custody at this time would only temporarily defer the inevitable. We conclude, however, that the evidence simply did not support the change from joint physical custody to single physical custody. It is true that some things were "getting lost in the shuffle," but it is not clear that there was a communication problem to a degree requiring abandonment of the existing joint physical custody arrangement. From our review of the record it cannot be said that the court had an evidentiary basis to revoke the order of joint physical custody and award single physical custody to Mother. Also, like the trial court, we do not view the mother's allegations as to defects in Father's parenting skills as sufficiently significant to warrant revoking the order of joint physical custody. Thus, we hold that the trial court erred in revoking the order of joint physical custody.

The judgment changing the joint physical custody to an award of single physical custody to the mother is reversed. Also, the order changing the child support is reversed accordingly. However, because there was evidence that the current arrangement was

causing things to "get lost in the shuffle," there was evidence of a "change of circumstances" in regard to the particular terms of the joint physical custody *plan.* Accordingly, we remand to the trial court to allow the court an opportunity to make an explicit finding as to a change of circumstances relevant to the terms of the joint physical custody *plan,* and to consider adjustments which may be in the best interest of the child in regard to the specifics of the plan.

If the trial court adjusts the plan of joint physical custody in such a way that it is appropriate for the court to adjust child support, the trial court may, of course, revisit the issue of child support in accordance with such changes. Otherwise, if the child's time remains equally divided between the parents, there will be no change in child support. The court, of course, should make no greater adjustments than are reasonably necessary in its discretion to address the particular problems in question. The court may, however, take into account any circumstances which have arisen during the time this case has been on appeal.

Judgment is reversed. The case is remanded to the trial court for proceedings consistent with this opinion.