**Calvin K. LESLIE, Appellant,**

v.

**Virginia M. LESLIE, Respondent.**

**No. WD 52584.**

Missouri Court of Appeals,
Western District.

Submitted Jan. 8, 1997.

Decided July 15, 1997.

Elizabeth H. Nigro, Kansas City, for appellant.

James T. Cook, Kansas City, for respondent.

Before ULRICH, C.J., P.J., and BERREY and SMART, JJ.

SMART, Judge.

This case involves an appeal from a trial court decision including some of the cost of private schooling in the Form 14 calculation of child support. Calvin K. Leslie ("Father") appeals from the modification order, claiming that the trial court erred in determining that costs of private schooling would be included in the calculation. Father claims that the trial court erred in including these costs because: (1) private school was not a "condition essential" to the welfare of Jason; and (2) Father did not agree that Jason should be enrolled in a private school. Because we find

that there was evidence to support the trial court's determination that private schooling at O'Hara High School would meet the particular educational needs of the child, Jason, we affirm the trial court.

## FACTUAL BACKGROUND

The parties' marriage was dissolved on March 15, 1990. Under the terms of the decree, Mother was awarded sole custody of the two children born of the marriage, Brian and Jason. Father was ordered to pay child support in the amount of $475.00 per month. On December 18, 1992, Father filed a motion to modify. Mother filed a cross-motion to modify. After Father filed his petition, both boys moved out of their Mother's home. Brian, the older boy, discontinued his post-secondary school education and rented an apartment. The parties agree that Brian is emancipated. Jason moved in with Brian. The trial court entered a temporary order on August 2, 1993, modifying child custody and terminating Father's child support. Jason then returned to Mother's home on June 1, 1994. Mother filed a motion to modify child support and the custody provisions of the temporary order on June 24, 1994. In her motion, Mother claimed that there had been changes in circumstances affecting Jason's support. She claimed that an upward deviation from the guidelines was necessary listing the following: (1) private secondary schooling; (2) orthodontic and dental expenses; (3) optometric and eyeglass expense; (4) ongoing chronic medical and medication expenses; (5) necessary private counseling; and (6) automobile and transportation expense to and from school and counselling.

In September, 1994, Jason enrolled at O'Hara High School, a private institution. Father learned of Mother's decision to place Jason at O'Hara in May 1994. He did not agree to Jason's attending private school. Jason's annual tuition at O'Hara was $2,850.00. In addition, there was a registration fee of $75.00, a club fee of $25.00 and a test fee of $9.00. Books cost $373.00. The trial court, after hearing the evidence, decided to include the sum of $200.00 per month in

the Form 14 calculation, effective from the date of enrollment in 1994.

The court calculated child support awards separately for seven separate periods of time, based on multiple changes of circumstances, including changes in earnings of the parties from time to time, the changes in residence of the children, the April 1, 1994 change in basic child support chart, and Jason's enrollment at O'Hara. The trial court gave Father credit for medical and dental insurance coverage for Jason. The support calculations reached were as follows: (1) August 1, 1993 through December 31, 1993: Mother owes Father $136.00 per month ($680.00); (2) January 1, 1994 through March 31, 1994: Mother owes Father $132.00 per month ($396.00); (3) April 1, 1994 through May 31, 1994: Mother owes Father $143.00 per month ($286.00); (4) June 1, 1994 through August 31, 1994: Father owes Mother $597.00 per month ($1,791.00); (5) September 31, 1994 through December 31, 1994: Father owes Mother $761.00 per month ($3,044.00); (6) January 1, 1995 through July 31, 1995: Father owes Mother $769.00 per month ($5,383.00); (7) August 1, 1995 through January 31, 1996: Father owes Mother $760.00 per month ($4,560.00). The net result was that Father was ordered to pay retroactive support in the amount of $6,638.00. The court ordered him to pay prospective support of $780.00 per month.

At the time of the hearing, Father was employed by the Kansas City, Missouri Police Department and earning approximately $51,000.00 per year. His gross monthly salary is $3,905.00. Father lives with his wife, who is also a police officer. Both provide security for the apartment complex in which they reside, and receive a reduction in their rent. Father has also earned money doing off-duty work; $3,123.00 in 1993, $7,800.00 in 1994, and $8,472.00 in 1995 (based on the first five months of that year). The trial court found Father's annual gross income to be $48,480.00 in 1993, $56,450.00 in 1994 and $57,120.00 in 1995. Mother's gross monthly income since August 1, 1995 is $1,214.00 per month. Before August 1, 1995 she earned $1,040.00 per month.

The support calculation included Jason's tuition at O'Hara High School, a private school. Mother claimed that the reasonable and necessary annual expense for Jason's attending O'Hara was $4,260.00. The trial court, considering Jason's ability to work to pay for his schooling, found that the reasonable and necessary expense allocable to the parents for Jason's education was $2,400.00 per year, or $200.00 per month, which the court entered on Form 14. The trial court found:

> Respondent's role as the custodial parent placed her in the best position to observe Jason's needs and concerns and to make a judgment as to what most surely serves his best interests. Her testimony as to Jason's educational needs should guide the court's consideration of what educational placement is reasonable and necessary to serve the boy's best interest. She testified that Jason is a good student who is college bound, that the teachers at O'Hara care, that they give him college counseling and treat him as an accelerated student. On the other hand, at the public school he had attended Jason was in fear for his life because of the fights and shootings and daily hostile environment. In addition, he has very poor vision, dental problems and allergies, all of which increased Respondent's financial burden.

Father appeals from the trial court's order requiring him to contribute toward Jason's private school tuition.

## STANDARD OF REVIEW

■ Review is performed under the auspices of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We will affirm the decision of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 32; *Welker v. Welker*, 902 S.W.2d 865, 867 (Mo.App. 1995). We defer to the trial court's superior ability to view the witnesses and determine credibility; it is free to believe or disbelieve all, part or none of the testimony given by any of the witnesses. *Price v. Price*, 921 S.W.2d 668, 671 (Mo.App.1996). Consequently, we accept the evidence and inferences favorable to the trial court's ruling and

disregard contrary evidence. *Welker*, 902 S.W.2d at 867.

Father contends that the standard by which the costs of a private school education should be considered is whether the private education is a "condition essential to the welfare" of the child. Father cites *Margolin v. Margolin*, 796 S.W.2d 38, 43 (Mo.App. 1990) for this proposition. Father seizes upon a comment of the court that private school education for the children in that case was a "condition essential" to their welfare. *Id.* It must be understood that in that case both parents had decided, since the time that the children were three years of age, that schooling at an exclusive private school was a very high priority. The grandparents of the children also considered such schooling sufficiently important that they were paying the tuition. After the dissolution, the Father, who was himself an alumnus of the same private school, decided that he favored public schooling for the children. The court's reference to the "condition essential" in that case must, therefore, be understood as a bit of hyperbole, expressed from the standpoint of the values formerly articulated by the parties. The court was not, in making such remark, necessarily attempting to establish a standard for resolving issues related to the costs of private schooling. We find no authority for the proposition that a court may order a parent to contribute to the cost of private education only when it is "essential" to a child's welfare. Instead, the test for determining when a court should order private schooling over the wishes of one parent is expressed in the language of Form 14: when such schooling "will meet the particular educational needs of the child."

## GUIDELINES

The procedure to determine child support is established by Rule 88.01 and § 452.340.1, RSMo 1994. *Price*, 921 S.W.2d at 673. Initially, the trial court must calculate the amount of support using Form 14. It is the trial court's task to determine "which Form 14 items and their respective amounts are properly included in the calculation based on the *Directions for Completion of Form 14* and the evidence presented."

*Elliott v. Elliott*, 920 S.W.2d 570, 575 (Mo. App.1996). The trial court must then consider whether the amount that is presumed to be correct (the Form 14 calculation) must be rebutted as being unjust or inappropriate after taking into consideration all relevant factors. *Id.* at 574–75. It is only then that the party seeking to rebut the Form 14 calculation shoulders the burden of attempting to show that it is unjust or inappropriate. *Id.* at 575.

Line 4e of Form 14 provides for "Extraordinary expense (Agreed by the parents or ordered by the Court)." The directions to Form 14 define these expenses as including, "(the cost of attending tutoring sessions; special or private elementary and secondary schools to meet the particular educational needs of the child; camps, lessons, travel or other activities intended to enhance the athletic, social or cultural development of the children)." The trial court, in the instant case, entered a portion of Jason's educational expense on Line 4e. The court used those educational expenses in calculating retroactive support as well as prospective support. We review the evidence to determine whether the calculation is supported by the evidence. *Elliott*, 920 S.W.2d at 574.

## THE EVIDENCE

Mother testified that the Jason's experience at the public high school Jason previously attended was less conducive to learning. She testified she considered the environment "hostile." Mother testified that she believed that problems such as lack of discipline, and disruptions by other students, resulted in Jason's older brother opting for a vo-tech school instead of college. She testified that Jason's asthma was also a problem at the public school. The top two floors of the public school were not air conditioned. This caused him to experience problems with his asthma when he had classes on those floors. A letter from Jason's doctor stated that Jason had to be in air conditioning from the end of February into June. At O'Hara the entire school building is air conditioned. Father points out that Jason did well academically in the public school and had

slipped in terms of grade point average at O'Hara. Mother contends that the slippage was due to adjustment difficulties. She points out that Jason is an accelerated student who is challenged both inside and outside class. Mother observed Jason interacting more with the students and attending more school functions. She noted that the size and organization of O'Hara allowed for more individual instruction tailored to Jason's needs.

Jason testified that he desired to go to O'Hara. He testified that he was doing well at O'Hara and that his grades were good. He further testified that at O'Hara he has more of a chance to work one-on-one with his teachers. He stated that he did not want to participate in extracurricular activities at the public school because he felt more threatened in the environment there. He is sufficiently committed to O'Hara that he is willing to work to help pay the expenses, and had been working during the year and a half of his enrollment there.

Missouri courts tend to defer to the judgment of the custodial parent "with respect to decisions concerning education beyond that provided by the state system." *Leahy v. Leahy*, 858 S.W.2d 221, 226 (Mo. banc 1993); *See also Elliott*, 920 S.W.2d at 576. Relying upon this standard, the court in *Elliott* held that it was not an abuse of discretion for the trial court to include $240.00 for private schooling and $26.00 for lessons as extraordinary expenses in its Form 14 calculation. *Id.* In *Elliott*, Mother filed a motion to modify, alleging that the financial change in circumstances of the parties and the minor child's need for education, social and sustenance had increased. *Id.* at 573. The child attended a private elementary school, took dance and piano lessons and was a member of the Scouts. Father contended that the trial court abused its discretion in ordering him to contribute to his daughter's expenses for private school, dance lessons and piano lessons. This court found that the inclusion of extraordinary expenses was supported by the evidence. *Id.* at 575. Whether or not we would necessarily agree with how the trial court resolved this issue in this case, we cannot say that it was an irrational decision or that it was without support in the evidence. We defer to the trial court. We believe the trial court could reasonably conclude that Jason's attendance at O'Hara would "meet the particular educational needs" of Jason.

Father argues that the court may include the costs of a private school education in the calculation of child support only when both parents agree to enroll the child in private school. Father cites *Dachsteiner v. Dachsteiner*, 894 S.W.2d 248 (Mo.App. 1995), for this proposition. Although it is true that the father in *Dachsteiner* did not agree to pay for his daughter's private education, the issue was not whether he agreed to do so but whether there was substantial evidence in the record showing an increased ability of the father to pay the increased support. *Id.* at 252. In the instant appeal, Father does not argue that he does not have the ability to pay and the record reflects that he does have that ability. There are a plethora of Missouri cases ordering a spouse to pay a portion of tuition for private schools where that spouse had not agreed to enroll the child in private school. *See, e.g., Bold v. Bold*, 912 S.W.2d 477, 481 (Mo. banc 1995) (award of support including provision for private school upheld over Father's contention that child should attend public school); *Elliott*, 920 S.W.2d at 570; *DeCapo v. DeCapo*, 915 S.W.2d 343 (Mo.App.1996) (Father required to pay 64% of child's post-secondary education over Father's objection that child would not succeed at school). The language of Form 14 itself in its use of the disjunctive "*or* ordered by the court" indicates that the trial court does not need agreement by the parents in order to include an extraordinary expense in its calculations.

## CONCLUSION

The judgment is affirmed.

ULRICH, C.J., P.J., and BERREY, J., concur.