## Linda Ann McCANDLESS– GLIMCHER, Appellant,

v.

## Mark Edward GLIMCHER, Respondent.

### No. WD 59383.

Missouri Court of Appeals, Western District.

April 23, 2002.

Michael C. McIntosh, Independence, for appellant.

David B. Sexton, Gladstone, for respondent.

Before HOWARD, P.J., BRECKENRIDGE and NEWTON, JJ.

PATRICIA BRECKENRIDGE, Judge.

Linda Ann McCandless–Glimcher (Mother) appeals the trial court's judgment dissolving her marriage to Mark Edward Glimcher (Father). On appeal, Mother raises four allegations of error concerning the trial court's adoption of Father's Form 14 calculation of the presumed correct child support amount for the parties' two minor children. Mother claims that the trial court should have rejected Father's Form 14 calculation because (1) it failed to include the cost of private school for the children; (2) it credited Father twice for the time the children spend in Father's custody; (3) it attributed rental income to Mother, and the evidence does not support that Mother has rental income; and (4) it credited Father with work-related child care costs, and the record does not support a finding that work-related child care costs exist. In addition to her allegations of error concerning the Form 14 calculation, Mother also claims that the trial court erred in failing to restore her maiden name, and in failing to order that Father's child support obligation be paid by income withholding.

This court finds that (1) the trial court did not abuse its discretion in excluding the cost of the children's private school education from the Form 14 calculation because the decision was supported by substantial evidence; (2) the trial court incorrectly credited Father on the Form 14 calculation for the time the children spend in his custody; (3) the trial court erred in that the income amount attributed to Mother on the Form 14 calculation was not supported by substantial evidence; (4) the trial court erred in crediting Father with work-related child care costs because there was not substantial evidence that such costs were necessary. Therefore, the child support award in the judgment is reversed and remanded to the trial court to recalculate the presumed child support amount, determine whether such amount is just and appropriate, and enter its child support award accordingly. On remand,

the court should also consider Mother's request to restore her maiden name, and the court should order that the child support award be paid by income withholding.

## I. Factual and Procedural Background

Father and Mother were married on June 7, 1981. They have two children, Jared, who was born on January 9, 1985, and Zachary, who was born on August 5, 1988. Mother and Father separated August 1, 1998, and Mother filed a petition for dissolution of the marriage later that month. Father filed a cross-petition for dissolution.

Prior to trial, Mother and Father entered into a settlement agreement, which resolved several of the issues connected with their dissolution. In their agreement, the parties agreed to joint legal and physical custody of the children. Pursuant to their joint physical custody arrangement, the children are to alternate weeks with each parent from Monday morning to the following Monday morning. During Mother's weeks with the children, they are to visit with Father on Tuesday and Thursday evenings from 6:00 P.M. to 9:00 P.M., and during Father's weeks with the children, they are to visit with Mother on Tuesday and Thursday evenings from 6:00 P.M. to 9:00 P.M. The agreement also provides for Mother and Father to alternate holidays with the children. The trial court approved the settlement agreement.

The only issues not resolved by the parties' settlement agreement were child support and attorney's fees.[1] The trial court held a hearing on these issues in May 2000, during which both parties testified and submitted proposed Form 14s. After the trial but before the court entered its judgment, Mother and Father notified the court that they had entered into a stipulation as to Mother's and Father's current employment income, and the cost of health and dental insurance for the children. With regard to their employment incomes, the parties stipulated that Mother, who was employed as a resident physician in child psychiatry, earned $39,718.80 per year or $3310 per month, and Father, who was employed as a physician in family practice, earned $125,000 per year or $10,416 per month. The parties each submitted revised proposed Form 14s in light of the stipulated-to amounts. The court adopted Father's proposed Form 14, finding the presumed child support amount of $272.89 to be just and appropriate. Mother filed this appeal.

## II. Child Support Award

### Standard of Review

■ This court will affirm the trial court's judgment regarding child support unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Ricklefs v. Ricklefs*, 39 S.W.3d 865, 869 (Mo.App.2001). In reviewing the record, this court views the evidence in the light most favorable to the trial court's judgment, and defers to the trial court's credibility determinations. *Monnig v. Monnig*, 53 S.W.3d 241, 244 (Mo.App.2001).

■ In *Woolridge v. Woolridge*, 915 S.W.2d 372, 379 (Mo.App.1996), this court set forth a two-step procedure for the trial court to follow to determine child support awards in compliance with § 452.340, RSMo 2000 and Rule 88.01. *Ricklefs*, 39

1. The court ordered each party to pay his and her own attorney's fees. Because Mother did not appeal that portion of the judgment concerning attorney's fees, this court will address facts pertinent only to the child support issue.

S.W.3d at 869–70. The Supreme Court approved this procedure in *Neal v. Neal*, 941 S.W.2d 501, 504 (Mo. banc 1997). *Id.* In the first step, the trial court "must determine and find for the record" the presumed child support amount under Form 14. *Id.* at 870. In the second step, the trial court, "after considering all relevant factors, must determine whether to rebut the [presumed child support amount] as being unjust or inappropriate." *Id.* The issues Mother raises in her first four points concern whether the trial court properly calculated the presumed child support amount, therefore, it involves the first, and not the second step, of the procedure outlined in *Woolridge*. *Id.*

 In determining the presumed child support amount under the first step of the procedure in *Woolridge*, the trial court can either accept one of the Form 14 calculations submitted by the parties, or reject both parties' Form 14 calculations and prepare its own Form 14. *Id.* Here, the trial court accepted Father's Form 14 calculation, found that the presumed child support amount as calculated on Father's Form 14 was just and appropriate, and awarded that amount in child support. Mother argues that the court should have rejected Father's Form 14 calculation. The trial court must reject a Form 14 calculation if "1) an item is incorrectly included in the calculation; 2) an amount of an item included in the calculation is incorrect; or, 3) the mathematical calculation is incorrect." *Woolridge*, 915 S.W.2d at 378. To decide whether the presumed child support amount has been correctly calculated in a Form 14, the trial court is "guided by [Form 14]'s directions for completion and comments for use, and the evidence in the case." *Id.* at 379. On appellate review of the correctness of the presumed child support amount, this court " 'review[s] the calculation to ensure that

not only [is it] done accurately from a mathematical standpoint, but that the various items and their amounts were properly included in the calculation and supported by substantial evidence.' " *Ricklefs*, 39 S.W.3d at 870.

## A. No Abuse of Discretion in Not Including Private School Cost

 In her first point, Mother argues that the trial court should have rejected Father's Form 14 calculation because Father did not include the cost of the children's private school education. Line 6e of the Form 14 allows for the entry of "[o]ther extraordinary child-rearing costs." Comment A for Line 6e provides, in pertinent part:

A. *COMMENT*: Post secondary educational expenses and private or parochial elementary, middle and high school expenses are not included in the schedule of basic child support obligations; therefore, these expenses may be included in Form 14 as an "other extraordinary child-rearing cost" if the parents agree or the court orders that the parents contribute to payment of these expenses.

"Other extraordinary child-rearing costs" may include, but are not limited to, the cost of tutoring sessions, special or private elementary and secondary schooling to meet the particular educational needs of a child[.]

 Thus, the trial court can consider the cost of private schooling in calculating the presumed child support amount. *Nelson v. Nelson*, 25 S.W.3d 511, 523 (Mo. App.2000). The trial court does not need the parents' agreement to include this cost in its calculation. *Leslie v. Leslie*, 948 S.W.2d 458, 462 (Mo.App.1997). "A parent's lack of willingness to pay is, however, a relevant factor." *Drury v. Racer*, 17 S.W.3d 608, 610 (Mo.App.2000). "[T]he

test for determining when a court should order private schooling over the wishes of one parent is ... when such schooling 'will meet the particular educational needs of the child.'" *Leslie*, 948 S.W.2d at 461 (quoting Form 14).

The evidence was that the children's entire education had been in private school. At the time of the trial, Jared was a freshman at Rockhurst High School, and Zachary was a sixth-grader at Clay Platte Children's House. Mother testified that both she and Father felt that private school was important for their children. When asked why she and Father believed that private school was important, Mother testified:

> Well, in particular, I believe that, while I was in medical school, the private school offered very much stability in terms of not making any kind of change. They attended preschool there and were able to stay in that same environment and receive, I feel like, a very good education, in addition to the—the child care that was provided there also.

The total cost of the children's private school education was approximately $1200 per month. Mother testified that she was not willing to pay a percentage of the cost of the children's private school education based upon her income because she did not believe that her current income and other expenditures would permit her to do so. Therefore, she requested that the court order Father to pay all of the private school cost. When Father's counsel asked Mother whether she believed, in light of the fact that Father could afford to pay for the children's private schooling and she could not, it would be best for her children to go to public school, Mother replied, "If that's the decision that needs to be made."

Father testified that he could not afford to pay the entire cost of the children's education. At the time of the trial, Fa-

ther's hours at the clinic where he was employed had been decreased, and his monthly income was $7375. Father testified that prior to the decrease in his hours, he earned over $10,000 per month and, thus, was able to pay all of the cost of the children's private schooling. Father testified that he was willing to pay for 67 1/2 percent of the cost of the children's private schooling, which was based upon his income, if Mother was willing to pay for 32 1/2 percent of the cost, which was based upon her income. If Mother was not willing to pay a percentage of the cost, Father believed that the children should attend public schools. Father testified that he did not have the money to pay for the entire cost, and "Economics only dictates [sic] what you can do."

After the trial, Father obtained new employment, and the parties stipulated that his monthly salary increased to $10,417. Despite the increase in his income, Father did not include the cost of the children's private school education in the Form 14 he submitted to the court to reflect the stipulated-to income amounts. The court adopted Father's Form 14 and, thus, did not include the cost of the children's private school education in calculating the presumed child support amount.

Mother argues that, since the parties stipulated that Father's income increased to over $10,000 per month, the level at which he previously had been able to afford to pay for private schooling, the court should have included the private school education cost in the Form 14 calculation. The evidence indicates that although Father was able to pay for the children to attend private school, however, he was unwilling to do so. Because Father did not agree that the children should attend private school, the court could include the cost of private school only if there was substantial evidence that the schooling

would meet the particular educational needs of the children. *Leslie*, 948 S.W.2d at 461.

On this issue, Mother testified that the children's entire education had been in private schools. When questioned about why she believed private schooling was important, Mother testified that private schools offered stability for the children while she was in medical school, because the private preschool provided a "very good education" and child care. At the time of trial, however, Mother was no longer in medical school, and the children were well beyond preschool. Mother offered no other evidence regarding private schooling.

Mother, as the appellant, has the burden of demonstrating that the trial court's decision not to include the cost of private schooling in the Form 14 calculation constituted an abuse of discretion. *See Leslie*, 948 S.W.2d at 462. While there was evidence that would support including the cost of private schooling in the Form 14 calculation, the evidence was not so compelling to make the trial court's decision not to include it an abuse of discretion. "Whether or not we would necessarily agree with how the trial court resolved this issue in this case, we cannot say that it was an irrational decision or that it was without support in the evidence." *Id.* Therefore, this court finds that the trial court did not abuse its discretion in not including the cost of the children's private school education in the Form 14 calculation.

### B. Overnight Visitation Adjustment Incorrect

Mother claims in her second point that the trial court should have rejected Father's Form 14 calculation because it gave Father double the credit for his overnight visitation periods. Line 11 of the Form 14 allows for an "[a]djustment for a portion of amounts expended by the parent obligated to pay support during periods of overnight visitation or custody." The directions for completing this line provide that the overnight visitation adjustment is to be calculated by multiplying the basic child support amount, which is found on Line 5, by a percentage that "is based on the number of periods of overnight visitation or custody per year awarded to and exercised by the parent obligated to pay support under any order or judgment." The applicable percentages are set out in a table:

| % of Year | Number of Overnight Periods | Adjustment |
|---|---|---|
| | Less than 36 | 0% |
| 10%–20% | 36–72 | 6% |
| 20%–25% | 73–91 | 9% |
| 25%–30% | 92–109 | 10% |

The directions for Line 11 further provide that "[i]f the parent obligated to pay support is or has been awarded periods of overnight visitation or custody for more than 109 days per year, the adjustment for that parent may be greater than 10%."

Here, Father has the children fifty percent of the year, or approximately 183 days. Adopting Father's Form 14, the court found that the basic child support amount from Line 5 was $1979. The court then multiplied this amount by ten percent, and credited Father an overnight visitation adjustment on Line 11 of $196.70. After determining the presumed child support amount for Mother to be $630.29, and for Father to be $1176.07, the court then cut the presumed child support amounts in half, for the reason that the parents each have the children fifty percent of the time. Next, the court subtracted half of Mother's presumed child support amount, $315.15, from half of Father's presumed child support amount, $588.04, and found that Father's child support obli-

gation was the difference between the two, which is $272.89.

This calculation is incorrect under Form 14 for several reasons. Because Father has the children fifty percent of the time, he was entitled to an overnight visitation adjustment on Line 11. The overnight visitation adjustment table in the directions sets out the applicable adjustment figures based upon the percentage of overnight visits the children spend with the parent paying support; however, the table provides adjustment figures for children who spend up to thirty percent of the year, or 109 days, with the parent paying support. Where children spend 109 days with the parent paying support, a ten percent adjustment is allowed. For children who spend more than 109 days with the parent paying support, the directions allow for the court to set an adjustment figure greater than ten percent.

In this case, the court gave Father a ten percent overnight visitation adjustment on the Form 14 it adopted. The court then cut Father's presumed child support amount in half, however, for the stated reason that Father has the children fifty percent of the time. This was erroneous, and not authorized by Form 14. With the inclusion of the overnight visitation adjustment on Line 11, the presumed child support amount had already been discounted to account for 109 days of Father's 183 days of overnight visitation with the children. Therefore, Father received double the credit for 109 of the 183 days of overnight visitation.

After erroneously cutting Father's and Mother's presumed child supports amount in half, the court further erred by subtracting Mother's presumed child support amount from Father's, and finding that Father's child support obligation was the difference between the two. This was incorrect because Father's presumed child support amount was based upon *his percentage* of the total combined child support costs and, thus, Mother's percentage of the total combined child support costs had already been considered and deducted from the total combined child support costs. The parties' percentages of the total combined child support costs were based upon their proportionate shares of the total adjusted monthly gross income. By subtracting Mother's presumed child support amount from Father's presumed child support amount, the court essentially doubled Mother's responsibility for the total combined child support costs, from 26.2% to 52.4%. There was no authority in Form 14 for subtracting Mother's presumed child support amount from Father's presumed child support amount.[2]

While the fact that Father has physical custody of the children fifty percent of the time is a factor the court is to consider in determining the child support award, the court's crediting Father with the ten percent overnight visitation adjustment, cutting Father's presumed child support amount in half, and subtracting Mother's presumed child support amount from Father's presumed child support were erroneous and unauthorized by Form 14. The child support award is, therefore, reversed, and the cause is remanded to the trial court for recalculation of the Form 14.

---

2. Comment C to Line 12, "Presumed child support amount," provides for the subtraction of one parent's presumed child support amount from the other in split custody situations. Split custody situations are those "in which each parent has primary physical custody of one or more but not all of the children." Form 14, Line 12, Comment C. This is not a split custody arrangement, as the parents have joint physical custody of both children. Moreover, in split custody arrangements, separate Form 14s are completed for the number of children in the primary physical custody of each parent. *Id.*

In recalculating the Form 14, Father is entitled to an adjustment in his child support obligation for the 183 days the children spend with him. Because the table provides for an adjustment for only up to 109 days, the court is permitted to set an adjustment greater than ten percent. In setting this adjustment, the court should be guided by the assumptions listed in Subsection (12) of the "Assumptions" section of the Form 14 directions:

(12) With respect to the adjustment for a portion of amounts expended by the parent paying support during periods of overnight visitation or custody:

The basic child support amount can be divided into three categories of expenditures:

*Variable expenditures* are child-related expenditures that vary directly with the amount of time a child spends with each parent, such as food. It has been assumed that variable expenditures represent 38% of the basic child support amount.

*Duplicated fixed expenditures* are child-related expenditures that do not vary with the amount of time a child spends with each parent but are incurred by both parents, such as housing. It has been assumed that duplicated fixed expenditures represent 30% of the basic child support amount.

*Non-duplicated fixed expenditures* are child-related expenditures that do not vary with the amount of time a child spends with each parent and are usually incurred by the parent in whose household a child resides the greater amount of the time, such as clothing. It has been assumed that non-duplicated fixed expenditures represent 32% of the basic child support amount.

The amount of any adjustment to which the parent obligated to pay support is entitled for a portion of the amounts expended on the children who are the subject of this proceeding during periods of overnight visitation or custody assumes that the parent obligated to pay support will incur:

(1) no significant expenditures for the children if that parent exercises visitation or custody for less than 36 periods per year;

(2) variable expenditures for the children if that parent exercises visitation or custody for 36 or more periods per year;

(3) duplicated fixed expenditures for the children if that parent exercises visitation or custody for 110 or more overnight periods per year; and

(4) no significant non-duplicated fixed expenditures for the children.

Therefore, in setting the amount of the overnight adjustment to which Father is entitled, the court should assume that, having the children 183 days per year, Father will incur variable expenditures, such as food; duplicated fixed expenditures, such as housing; but will not incur significant non-duplicated fixed expenditures, such as clothing for the children. If the court wants to give Father the maximum overnight visitation adjustment, the maximum overnight visitation adjustment for having the children 183 days per year is thirty-four percent. Hon. Joseph A. Goeke, III, *The Missouri Custody Adjustment Methodology: Where Did the Numbers Come From?*, 54 J. Mo. Bar 305, 309 (1998).

Assuming that the trial court were to give Father the thirty-four percent overnight visitation adjustment, the presumed child support amount would be calculated as follows.[3] On Line 1, the parties' month-

---

3. The dollar amounts used are rounded upward to the nearest dollar, per the directions

ly gross incomes are $3310 per month for Mother,[4] and $10,416 per month for Father. The parties have no Line 2 adjustments, so their Line 3 adjusted monthly gross incomes are the same as their monthly gross incomes, and their combined adjusted monthly gross income is $13,726. On Line 4, Mother's proportionate share of the combined adjusted monthly gross income is twenty-four percent, while Father's is seventy-six percent. Based upon the parties' combined income, the basic child support amount on Line 5 is $1950. On Line 6, the additional child-rearing costs are $233 in health insurance, and $54 in dental insurance, paid by Father.[5] Thus, the total additional child-rearing costs on Line 7 are $287. The total combined child support costs on Line 8 are $2237.

Applying each parent's proportionate share of the combined adjusted monthly gross income to the total combined child support costs of $2237, Mother's support obligation on Line 9 is $537, while Father's support obligation on Line 9 is $1700. Father is then entitled to $287 as credit for additional child-rearing costs on Line 10, and $663 as his overnight visitation adjustment, which is the Line 5 basic child support amount of $1950 multiplied by thirty-four percent. Subtracting the additional child-rearing costs credit and the overnight visitation adjustment from Father's support obligation, Father's presumed child support amount is $750.

The trial court must then determine if the $750 presumed child support amount is just and appropriate. *Woolridge*, 915

S.W.2d at 379. If the trial court determines that the presumed child support in this case is unjust and inappropriate, it should rebut it. Comment D to Line 12, entitled, "Presumed child support amount," provides that "[a] deviation from the presumed child support amount may be appropriate when an award of custody, including, but not limited to, an award of joint physical custody, results in the child or children spending substantially equal time with both parents."

Rebuttal would be appropriate in this case if the court finds that Father's actual expenditures for the children are contrary to the assumed expenditures listed in Subsection (12) of the "Assumptions" section.[6] Specifically, rebuttal would be appropriate if the court finds, per the converse of assumption (4), that Father does, in fact, incur significant non-duplicated fixed expenditures for the children. This is consistent with Comment D to Line 12, which provides that to decide the appropriate deviation in cases where the parents have joint physical custody of the children, the court "shall consider which parent is likely to pay expenses of the child or children that are unaffected by the amount of time spent with each parent, e.g., clothing, activity fees, school, and books." The expenses to which this comment refers are non-duplicated fixed expenses. If the court finds that Father does incur significant non-duplicated fixed expenses, however, Comment D to Line 12 further provides that the court "shall ensure that such expenses, as well as the expenses for which a specific adjustment is authorized

to Form 14.

4. See discussion of Mother's gross income *infra* section II.C.

5. See discussion of Father's work-related child care costs *infra* section II.D.

6. If the trial court determines it is appropriate to rebut the presumed child support amount, Comment B to Line 11 would not apply because Comment B applies to rebuttal of the overnight visitation adjustment on Line 11 and not the rebuttal of the presumed child support amount.

on Form No. 14 ... are shared in proportion to the parents' incomes and *not in proportion to the time spent with each parent.*" (Emphasis added.)

Even if this court were to characterize the trial court's child support award of $272.88 as a rebuttal of the presumed child support amount, it is not supported by the evidence because it was computed utilizing figures which already included an overnight visitation adjustment. In addition, the award failed to allocate the children's expenses in proportion to the parents' incomes, and placed a greater burden on Mother, whose proportionate share of the parties' combined income was only twenty-four percent. The child support award in this case is reversed, and the cause is remanded to the trial court to recalculate the presumed child support amount in a manner consistent with this opinion. If the court finds that the presumed child support amount is unjust and inappropriate, it shall determine an appropriate deviation under the guidelines set forth in Comment D to Line 12 of Form 14, and in Subsection (12) of the "Assumptions" section of Form 14.

## C. Insufficient Evidence to Support Mother's Income

■■■ Although this court is reversing the child support award based upon the court's incorrect credit to Father for overnight visitation periods, this court will address Mother's remaining points of error, as they are likely to occur on remand. In her third point, Mother claims that the trial court should have rejected Father's Form 14 calculation because the calculation incorrectly included Mother's rental income. At trial, Mother testified on direct examination about her income by referring to her 1999 tax return. Mother testified that her income from her employment as a resident physician in child psychiatry, as she reported on her tax return, was $39,223 per year, or $3269 per month. Father testified that he believed Mother's monthly income was actually $3543, which he calculated by taking the year-to-date earnings figure on Mother's April 28, 2000, pay stub and dividing it by four.

After the trial but before the judgment was entered, the parties stipulated that Mother's annual income had increased to $39,719, or $3310 per month. When they filed this stipulation with the court, the parties also filed revised Form 14s. Neither party used $3310 as Mother's monthly gross income, however. Mother listed her monthly gross income on her Form 14 as $3269, which was her prior salary, and Father listed Mother's monthly income on his Form 14 as $3693.83.

Mother argues that the trial court should have rejected Father's Form 14 because the $3693.83 monthly income attributed to her is incorrect. Mother contends that, in adopting Father's Form 14, the trial court incorrectly attributed rental income to her. At trial, Mother testified that she received and reported income from the rental property that she and Father agreed would be awarded to her as part of their property settlement agreement. Mother did not testify as to the amount of income she received from the property, but she did testify that her income from that property, less her expenses, resulted in a net loss of $146. On cross-examination, Mother testified that she has income from farm property that was awarded to her also. She testified that her income from the farm property was $800; but she did not specify if that amount was per year or per month.

With regard to the gross income to be entered on Line 1 of the Form 14, the directions provide that where a parent receives rental income, " 'gross income' [from the rental income] is gross receipts

minus the ordinary and necessary expenses incurred to produce such receipts." Because Mother sustained a loss in her rental income due to her expenses, Mother argues that rental income should not have been included in her gross income on the Form 14 calculation.

The gross income figure the court used was taken from Father's Form 14. On appeal, Father argues that there is no proof that the trial court attributed rental income as additional income to Mother. Thus, Father is essentially admitting that Mother's gross income amount on the Form 14 did not include rental income.[7] If Mother's monthly gross income amount on the Form 14 did not include rental income, there is nothing in the record to support the $3693.83 figure used, since the parties stipulated that Mother's income from her employment was $3310. Moreover, even if Mother's monthly gross income amount on the Form 14 did include rental income, there was no evidence to support that the rental income was approximately $384 per month, which is the difference between the $3693.83 figure used and the $3310 employment income figure to which the parties stipulated.

This court finds that there was not substantial evidence in the record to support the court's determination that Mother's monthly gross income is $3693.83. On remand, the trial court is directed to use the income amount for Mother to which the parties stipulated, which was $3310 per month, in recalculating the Form 14.

### D. Insufficient Evidence of Father's Work–Related Child Care Costs

In her fourth point, Mother argues that the trial court should have rejected Father's Form 14 calculation because it credited Father with work-related child care costs, and the evidence did not support a finding that such work-related child care costs exist. Form 14 allows for the inclusion of the work-related child-care costs of the parent obligated to pay support in the presumed child support amount calculation. The directions for Line 6b provide for the entry on this line of "the monthly amount of any reasonable work-related child care costs incurred or to be incurred for the children who are the subject of this proceeding by the parent obligated to pay support."

The trial court has discretion, however, "to determine the need for work-related child care expenses." *Ricklefs*, 39 S.W.3d at 873. "Where a custodial parent establishes actual and necessary child care expenses incurred as a result of working . . ., the expenses can be considered in calculating child support." *Stufflebean v. Stufflebean*, 941 S.W.2d 844, 847 (Mo.App. 1997).

On Father's Form 14, he entered $140 as his work-related child care expenses. The only evidence concerning Father's work-related child care expenses was presented during Father's direct testimony, when Father's counsel questioned him about the entries on his Form 14 worksheet. Referring to the Form 14, Father's counsel asked Father, "Now, pursuant to this document, you pay the work-related childcare of 140 a month?" Father replied, "Yes."

As this court has already stated, the inclusion of an item in the presumed child support amount calculation must be supported by substantial evidence. *Rick-*

---

7. Father does not state whether Mother's income on his Form 14 included farm income; however, the only farm income amount testified to at trial was $800. Whether it is $800 per month or $800 per year, it does not support the $3693.83 income amount attributed to Mother, since her income from her employment was $3310 per month.

*lefs,* 39 S.W.3d at 870. Father's mere acknowledgement that he paid $140 in work-related child care expenses on his Form 14 worksheet did not constitute substantial evidence that the expenses were necessary. Although Father also testified that between November 1998 and September 1999 he paid for the children's after-school daycare, he did not testify as to the cost of that daycare, or that such daycare continued to be necessary for the children, who were ages fifteen and almost twelve at the time of trial. There was not substantial evidence that at the time of the trial in May 2000, either parent had actual and necessary work-related child care expenses for the children. Thus, the trial court should have rejected Father's Form 14 for erroneously including $140 in work-related child care expenses for Father.

### III. Maiden Name Restoration Should Be Considered on Remand

█ In her fifth point, Mother claims that the trial court erred in failing to restore her maiden name of "McCandless" to her. In her petition, Mother requested that the court restore her maiden name to her, but at trial, Mother did not testify that she wanted her maiden name restored. Father raised no objection to the restoration of Mother's maiden name in his pleadings or at trial. In its judgment, the trial court did not deny Mother's request to restore her maiden name, but simply failed to rule on the issue.

█ "Pleadings are not self-proving." *Schindler v. McCluskey,* 58 S.W.3d 48, 50 (Mo.App.2001). It was Mother's burden to support her request with testimony at trial that she desired to have her maiden name of "McCandless" restored to her. Nevertheless, because this court is remanding the case, and because Mother is entitled to have her maiden name restored since there is no evidence that the name change

will be detrimental to anyone, *see Neal,* 941 S.W.2d at 502–03, the trial court should consider Mother's request to restore her maiden name to her.

### IV. Income Withholding Required by § 452.350.2

█ In her sixth point, Mother argues that the trial court erred in failing to order that Father pay child support by income assignment. Section 452.350.2, requires that court-ordered child support be paid by income withholding, with two exceptions:

2. For all orders entered or modified in IV D cases, and effective January 1, 1994, for every order for child support or maintenance entered or modified by the court pursuant to the authority of this chapter, or otherwise, income withholding pursuant to this section shall be initiated on the effective date of the order, except that such withholding shall not commence with the effective date of the order in any case where:

(1) One of the parties demonstrates, and the court finds, that there is good cause not to require immediate income withholding. For purposes of this subdivision, any finding that there is good cause not to require immediate withholding must be based on, at least, a written determination and an explanation by the court that implementing immediate wage withholding would not be in the best interests of the child and proof of timely payments of previously ordered support in cases involving the modification of support orders; or

(2) A written agreement is reached between the parties that provides for an alternative arrangement.

In this case, Father did not present evidence of good cause, and the court did not make any finding of good cause not to require income withholding. Likewise, no

evidence of a written agreement between the parties providing for an alternative arrangement was presented. Thus, the trial court was required to order income withholding in its judgment. *Carter v. Carter*, 940 S.W.2d 12, 18 (Mo.App.1997). The trial court's judgment was silent on the issue of income withholding, however.

If income withholding was not initiated on the effective date of the child support order, § 452.350.3 provides that the party paying child support "may execute a voluntary income assignment at any time, which assignment shall be filed with the court and shall take effect after service on the employer or other payor." Two and one-half months after the court entered the judgment in this case, Father executed and filed with the court a voluntary income assignment. The voluntary income assignment took effect in November 2000. Therefore, Father argues that the issue is now moot.

If this court were affirming the child support award, the issue of the court's failure to order child support be paid by income withholding would be moot. *See State ex rel. Reed v. Reardon*, 41 S.W.3d 470, 473 (Mo. banc 2001). This court is reversing and remanding the child support award, however. Because there was no evidence of good cause not to require immediate income withholding, nor was there any evidence of a written agreement providing for an alternative to income withholding, this court directs the trial court, on remand, to order that the child support award be paid by income withholding, initiated on the effective date of the court's new order. Section 452.350.2.

The child support award in the judgment is reversed and remanded to the trial court to recalculate the presumed child support amount, determine whether such amount is just and appropriate, and enter its child support award accordingly. On remand, the court should also consider Mother's request to restore her maiden name to her, and the court should order that the child support award be paid by income withholding.

All concur.