Steven L. KROST, Petitioner/Appellant,

v.

Lora J. KROST, Respondent/Respondent.

No. ED 82343.

Missouri Court of Appeals, Eastern District, Division Five.

Feb. 24, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 14, 2004.

Application for Transfer Denied May 25, 2004.

Michael P. Cohan, St. Louis, MO, for appellant.

Mary Ann Weems, Clayton, MO, for respondent.

SHERRI B. SULLIVAN, Chief Judge.

*Introduction*

Steven L. Krost (Father) appeals from a trial court judgment entered in a dissolution action. Father alleges trial court error in the calculation of the award of child support. We reverse and remand in part and affirm in part.

*Factual and Procedural Background*

Father and Lora J. Krost (Mother) were married on November 30, 1985. The parties separated in August 2000. On May 2,

2001, Father filed a Petition for Dissolution of Marriage and on October 9, 2001, Mother filed a Cross–Petition for Dissolution of Marriage. The parties have four children born of the marriage between the years 1986 to 1993. The parties settled the child custody issue and submitted a parenting plan prior to trial.

After a trial in August 2002, the trial court entered a Judgment and Decree of Dissolution (Decree) dissolving the parties' marriage. The court approved the parties' agreement on the child custody issue and attached and incorporated by reference the parenting plan to the Decree. The court awarded joint legal and physical custody of the children to the parties. After considering the applicable child support standards under Section 452.340,[1] the court ordered Father to pay to Mother $425 in monthly child support. The court rejected the Form 14s submitted by the parties and prepared its own Form 14, determining the amounts in accordance with the child support guidelines under Rule 88.01[2] and attaching the Form 14 to the Decree. On the Form 14, the court set out Mother's monthly gross income as $1,817 ($21,804 per year). The court also gave Father a Line 11 overnight visitation or custody adjustment of 18%.

Subsequently, Father filed a Motion For a New Trial, which the trial court overruled after a hearing. Father appeals from the Decree.

*Standard of Review*

■ The standard for reviewing a judgment of dissolution is the same for reviewing any court-tried action. *Bullard v. Bullard*, 929 S.W.2d 942, 944 (Mo.App. E.D.1996). The judgment must be affirmed unless it is unsupported by sub-

stantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We view the evidence and the inferences therefrom in the light most favorable to the judgment and disregard all contrary evidence. *Endebrock v. Endebrock*, 916 S.W.2d 456, 457 (Mo.App. E.D.1996). Additionally, we recognize the superior position of the trial court to judge factors such as credibility, sincerity, character of the witnesses, and other intangibles that are not revealed in a trial transcript. *Ficker v. Ficker*, 62 S.W.3d 496, 499 (Mo.App. E.D.2001). The trial court is free to accept or reject all, part, or none of the testimony of a witness. *Endebrock*, 916 S.W.2d at 459.

*Discussion*

■ Father raises two points on appeal. In his first point, Father argues that the trial court erred in its Form 14 child support calculation by setting out Mother's monthly gross income as $1,817 ($21,804 per year) because the evidence did not support this figure.

■ An award of child support is within the sound discretion of the trial court. *Bullard v. Briem*, 969 S.W.2d 880, 883 (Mo.App. E.D.1998). We will not substitute our judgment for that of the trial court absent a manifest abuse of discretion, and we will not disturb an award of child support unless the evidence is "palpably insufficient" to support it. *Id.*

Regarding Mother's income, the following evidence was presented at trial. Since 1996, Mother has worked as a permanent part-time employee, twenty-five hours per week, with United Food and Commercial Workers Union, Local 655. Mother currently earns $17.40 per hour ($1,885/

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

2. All rule references are to Mo. R. Civ. P.2003, unless otherwise indicated.

month) as a claims process server in the health and welfare department. In 2002, the department began using a new computer system and health care insurance provider so all employees in the department had to work mandatory overtime for about four or five months. Therefore, as of trial in August 2002, Mother had earned about $24,104 for the year. The mandatory overtime ended about a week or two before trial, and Mother was not aware of any overtime scheduled for the future. The pension administrator for Mother's employer testified that overtime had not been required for a few years and that it was not guaranteed for the future. Since being employed as a permanent part-time employee, 2002 is the only time that Mother has had mandatory overtime. Mother's employer has not offered Mother full-time employment. As testified at trial, on her Form 14, Mother asserted a monthly gross income of $1,832. Tax returns showed the following income for Mother in the respective years: 1998—$24,661; 1999—$21,909; 2000—$26,784; 2001—$30,074.

We find this evidence "palpably insufficient" to support the trial court's determination of Mother's monthly gross income as $1,817.[3] No evidence was presented from which the trial court could have arrived at this amount. The closest figure is from Mother's 1999 tax return showing a yearly income of $21,909 or $1,826 per month. We note that the trial court has discretion to ignore income history in calculating a child support obligation and instead to look at a single year's income figure, if the court finds that figure to be the most accurate predictor of a parent's income. *Bond v. Bond*, 77 S.W.3d 7, 11 (Mo.App. E.D.2002). The trial court made no such finding, and even if it did, the figure used by the trial court is still less than that indicated by the 1999 tax return.

We also note that Father argues that the trial court should have included Mother's overtime compensation in calculating her monthly gross income. The Directions and Comments for Use of Form 14, Line 1 provide that overtime compensation may be included in a parent's yearly "gross income" in appropriate circumstances. Thus, inclusion of overtime compensation is within the trial court's discretion. However, we do not reach this issue because the trial court's determination of Mother's monthly gross income falls outside of the evidence presented even as to her base pay.

The trial court's determination of Mother's monthly gross income is not even within the range of income evidence presented. *Cf., e.g., Reed v. Reed*, 969 S.W.2d 287, 289 (Mo.App. E.D.1998). Thus, we hold that the amount determined by the trial court to be Mother's monthly gross income for purposes of child support calculation is unsupported by the evidence and against the weight of the evidence. Accordingly, Father's point one on appeal is granted.

■ In his second point on appeal, Father argues that the trial court erred in its Form 14 child support calculation because Father was entitled to a 34% overnight visitation or custody adjustment, rather than the 18% given by the trial court.

Our standard of review is the same as that used in Father's point one on appeal.

Line 11 of Form 14 provides an adjustment for a portion of the amounts expended by the parent obligated to pay child support during periods of overnight visitation or custody. The adjustment is a percentage based on the number of periods of overnight visitation or custody per year awarded to and exercised by the parent obligated to pay child support under any

---

**3.** The trial court did not specify how it arrived at $1,817 as Mother's monthly gross income, and therefore we are uncertain from where the figure is derived.

order or judgment. The adjustment is calculated by multiplying the basic child support amount from Line 5 of the Form 14 by the applicable percentage adjustment from the table provided. The table mandates a 10% adjustment for periods of overnight visitation or custody between 92 and 109 days per year.

■ The Directions and Comments for Use of Form 14, Line 11 provide that if the parent obligated to pay child support is or has been awarded periods of overnight visitation or custody of more than 109 days per year, the adjustment for that parent may be greater than 10%. Thus, although the trial court may, in its discretion, set an adjustment exceeding 10% for periods of more than 109 days per year, the trial court is not obligated to do so. *Hatchette v. Hatchette*, 57 S.W.3d 884, 890 (Mo.App. W.D.2001).

Under the parenting plan adopted by the trial court, Father receives more than 109 days per year of overnight visitation or custody.[4] Thus, Father is entitled to a Line 11 adjustment of at least 10%. The trial court gave Father an 18% adjustment, which met, and even surpassed, the Line 11 requirement.

Father argues that *McCandless–Glimcher v. Glimcher*, 73 S.W.3d 68 (Mo. App. W.D.2002) mandates reversal. Father's argument is misplaced. In *Glimcher*, our colleagues in the Western District considered a case in which the parent who paid child support was awarded about 183 days of overnight visitation per year. *Id.* at 75. The court held that the trial court erred when it gave the support-paying father a 10% overnight visitation adjustment, but then cut his presumed child support amount in half and subtracted the

mother's presumed child support amount from the father's to determine the father's child support obligation. *Id.* at 76. The court remanded to the trial court for recalculation of the Form 14. *Id.* In so doing, the court stated the following about the Line 11 adjustment:

> In recalculating the Form 14, Father is entitled to an adjustment in his child support obligation for the 183 days the children spend with him. Because the table provides for an adjustment for only up to 109 days, *the court is permitted to set an adjustment greater than ten percent.* In setting this adjustment, the court should be guided by the assumptions listed in Subsection (12) of the "Assumptions" section of the Form 14 directions.... Therefore, in setting the amount of the overnight adjustment to which Father is entitled, the court should assume that, having the children 183 days per year, Father will incur variable expenditures, such as food; duplicated fixed expenditures, such as housing; but will not incur significant non-duplicated fixed expenditures, such as clothing for the children. *If the court wants to give Father the maximum overnight visitation adjustment,* the maximum overnight visitation adjustment for having the children 183 days per year is thirty-four percent.[5]

*Id.* at 77. (emphasis added).

While *Glimcher* supports the trial court's discretion in giving Father an adjustment greater than 10%, we disagree with Father that *Glimcher* obligates the trial court to set an adjustment of 34%. As the court in *Glimcher* said, the trial court may award the maximum adjustment if it "wants to" do so. Nothing in that

---

4.  More specifically, the parties each have custody 50% of the year.

5.  The 34% maximum referred to in *Glimcher* derives from an article authored by the Honorable Joseph A. Goeke, III, a St. Louis County Associate Circuit Court Judge, in which he calculated adjustment multipliers for cases where the parent who pays child support has more than 109 days of overnight visitation or custody. *See* Hon. Joseph A. Goeke, III, *The*

language is mandatory, which is in accord with the Directions and Comments for Use of Form 14, Line 11. *See also Sarwar v. Sarwar,* 117 S.W.3d 165 (Mo.App. W.D. 2003).

Thus, we hold that the trial court did not abuse its discretion in giving Father an 18%, rather than a 34%, Form 14, Line 11 adjustment for overnight visitation or custody. Accordingly, Father's point two on appeal is denied.

### Conclusion

We reverse and remand for recalculation of the Form 14 using an amount for Mother's monthly gross income from within the range of evidence presented. In all other respects, the judgment of the trial court is affirmed.

GEORGE W. DRAPER III, J., and BOOKER T. SHAW, J., concur.

*Missouri Custody Adjustment Methodology: Where Did the Numbers Come From?,* 54 J.